UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

```
CEDRIC SANBORN and                    :
LESLIE SANBORN,                       :
                                      :
            Plaintiffs,               :
                                      :
     v.                               :   No. 2:12-cv-00228-wks
                                      :
WILLIAM JENNINGS and the              :
CITY OF MONTPELIER,                   :
                                      :
            Defendants.               :
```

**OPINION & ORDER**

This action stems from Cedric and Leslie Sanborn's arrests and citations for unlawful trespass for kayaking on Berlin Pond. The Sanborns brought claims pursuant to 42 U.S.C. §§ 1983, 1988; the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; Chapter 1, Articles 1, 10, and 11 of the Vermont Constitution; and the common law of Vermont, against Officer William Jennings ("Officer Jennings" or "Jennings"), in his individual and official capacities, and against the City of Montpelier.  See Compl., ECF No. 1, Ex. A ¶ 1.  Defendant Jennings filed a motion for summary judgment on the grounds that 1) he had probable cause to issue a citation to Plaintiffs for unlawful trespass on Berlin Pond and 2) he is entitled to qualified immunity from all of Plaintiffs' claims.  Def. Jennings's Mot. Summ. J. ("Def. Mot. Summ. J."), ECF No. 29.

For the reasons described below, Defendant Jennings's motion for summary judgment is **granted**.

## FACTUAL SUMMARY

Berlin Pond is a natural body of water, roughly two miles long and covering approximately 256 acres. *See* Def. Jennings's Local Rule 56(a) Statement Undisputed Material Facts ("Def.'s Facts"), ECF No. 29-3 ¶ 1. Berlin Pond has supplied Montpelier with water since 1884, even though the Pond is located inside the Town of Berlin. *Id.* Although Montpelier owns most of the land surrounding the Pond, the City does not own the Pond itself. *City of Montpelier v. Barnett*, 191 Vt. 441, 445-46 (2012). Nonetheless, Montpelier placed "no trespassing" signs around Berlin Pond and regulated its use.

In 2009, Cedric and Leslie Sanborn, along with Richard Barnett, began to explore the possibility of using Berlin Pond for recreation. *See* Def.'s Facts ¶ 10. At all relevant times, the Sanborns employed Barnett at their sporting goods store. *See id.* The Sanborns and Barnett hoped kayaking on Berlin Pond would result in the pond's proper ownership being taken up in court. *See* Tr. Prelim. Inj. Hr'g, ECF No. 29-13, Ex. G ¶ 15.

On July 30, 2009, Montpelier Chief of Police Anthony Facos found Barnett kayaking on Berlin Pond when he responded to a trespassing complaint. *See* Def.'s Facts ¶ 12. Chief Facos ordered Barnett to remove his boat and himself from the pond and

2

issued him a citation for unlawful trespass. *Id.* On August 20, 2009, the Washington County States' Attorney informed Barnett no charges would be filed against him. Barnett Aff., Ex. 17 ¶ 9. There is no evidence to suggest that Officer William Jennings was aware of this decision nor the impact of such a determination on future prosecutions.

On September 6, 2009, Jennings arrived at Berlin Pond after receiving a trespass complaint. Def.'s Facts ¶ 26. When he arrived, Jennings observed the Sanborns kayaking on the pond. *Id.* The Sanborns told Jennings that they "had a good idea" why he was there, but claimed the pond's "no trespassing" signs were no longer valid, and that the pond was public. Def. Facts ¶¶ 28, 29; Pls. Resp. ¶ 6. Mr. Sanborn said it was a "difference of opinion" as to whether kayaking was allowed on the pond. Def.'s Facts ¶ 29. Jennings asked the Sanborns to meet him at the Montpelier Police Department, where the Sanborns were issued a citation to appear for arraignment on October 22, 2009. *Id.* ¶ 31. The Sanborns were charged with four counts: intentional violation of a state health order in violation of Vt. Stat. Ann. tit. 18 §§ 122, 130; intentional interferences with a protected drinking water source in violation of Vt. Stat. Ann. tit. 10 § 1682; violation of Montpelier's ordinance against misusing a reservoir; and violation of Montpelier's ordinance prohibiting trespassing on city property or resources. *Barnett*, 191 Vt. at

447.  The State's Attorneys Office ultimately did not pursue the charges against the Sanborns.  Def.'s Facts ¶ 38.

On January 28, 2011, the Washington Superior Court granted the City of Montpelier a permanent injunction against the Sanborns and Barnett, which precluded them from trespassing on the City's property surrounding Berlin Pond and from boating, fishing, or swimming in Berlin Pond.  *Barnett*, 191 Vt. at 448.  In 2012, the Vermont Supreme Court reversed.  *Id.* at 453.

As early as 1911, the Vermont Supreme Court upheld a conviction for bathing in Berlin Pond in violation of a 1903 State Board of Health order.  *Barnett*, 191 Vt. at 454 (citing *State v. Morse,* 84 Vt. 387 (1911)).  In 1926, the State Board of Health issued the following order: "Boating, fishing and bathing in the waters of Berlin Pond, of its tributaries for a distance of one-half mile from their mouths, of the outlet of Berlin Pond to the Montpelier Reservoir, and of the Montpelier Reservoir are hereby prohibited."  *Id.* at 454; *see also State v. Quattropani*, 99 Vt. 360 (1926) (upholding the order).  The legal effect of the 1926 Board of Health order remained in dispute until the Vermont Supreme Court decided *Barnett* in 2012.  *Id.* at 455-57.

## DISCUSSION

A motion for summary judgment should be granted if there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  *Harlen*

4

*Assocs. v. Incorporated Village of Mineola,* 273 F.3d 494, 498 (2d Cir. 2001) (quoting Fed. R. Civ. P. 56(c)). An issue of genuine fact arises when a "reasonable jury could return a verdict for the nonmoving party." *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* Summary judgment cannot be defeated by mere conjecture, allegations, or speculations without hard evidence for support. *D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir. 1998).

The Court need not address issues related to the legality of the arrests and prosecution. Jennings is entitled to qualified immunity, and allegations against him are dismissed.

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This allows government officials to make reasonable but mistaken judgments about open legal questions. *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2085 (2011). Qualified immunity protects all but the "plainly incompetent" and "those who knowingly violate the law." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

Qualified immunity is an affirmative defense, and the burden is on the defendant-official to establish it on a motion for summary judgment. *Bailey v. Pataki*, 708 F.3d 391, 404 (2d Cir. 2013). In qualified immunity cases, the concern is not whether the defendant's conduct was correct, but rather whether the defendant's chosen course of action was objectively reasonable given the circumstances. *Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995). If a court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances, summary judgment for the officers is appropriate. *Id.* An officer is not put on notice that his conduct would be clearly unlawful if either (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act. *Cerrone v. Brown*, 246 F.3d 194 (2d Cir. 2001).

The objective reasonableness of an officer's actions is decided without regard to underlying intent. *Coll v. Johnson*, 161 Vt. 163, 165 (1993). "An officer's determination is objectively reasonable if there was arguable probable cause at the time of arrest -- that is, if officers of reasonable competence could disagree on whether the probable cause test was

met." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007). Jennings had "arguable probable cause" if (1) it was objectively reasonable for Jennings to believe he possessed probable cause or (2) reasonable officers could differ over whether there was probable cause. *See Walczyk v. Rio*, 496 F.3d 139 (2d Cir. 2007).

In Vermont, "[a] police officer is immune from tort liability when he is performing a discretionary act in good faith during the course of his employment and is acting within the scope of his authority." *Livingston v. Town of Hartford*, 186 Vt. 547, 550 (2009) (citing *Stevens v. Stearns*, 175 Vt. 428, 434 (2003)). An act is discretionary if its performance requires exercise of professional judgment. *Napolitano v. Flynn*, 949 F.2d 617, 622 (2d Cir. 1991) (finding officer's act of treating group as trespassers at motel was not ministerial). "[A] lack of good faith is not established by asserting that the right to be free from the torts alleged in plaintiff's complaint is clearly established." *Murray v. White*, 155 Vt. 621, 630 (1991). Instead, good faith exists if the "official's acts did not violate clearly established rights of which the official reasonably should have known." *Id.*

The Plaintiffs argue that, because they were lawfully kayaking on Berlin Pond, Jennings violated their rights by arresting and citing them for trespass. However, the right to

7

kayak on Berlin Pond free from arrest was not clearly established at the time of the arrests and citations.  To determine if a right is clearly established, courts consider: (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.  *Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) (citing *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989)).  Montpelier's Berlin Pond regulations were not held invalid until the Vermont Supreme Court's decision in *Barnett*, which was almost three years after the Sanborns were arrested and cited.  191 Vt. 441.  Before *Barnett*, the Vermont Supreme Court decisions had not indicated that Montpelier's regulations were unauthorized.  *See Vermont Woolen Corp. v. Wackerman*, 122 Vt. 219, 228 (1961) (comparing the regulations forbidding boating and swimming on Berlin Pond to the Kingsbury Branch regulations without saying that the regulations were invalid); *State v. Hall*, 119 A. 884, 885 (Vt. 1923) (declining to decide whether boating was allowed on Berlin Pond).  In fact, two Vermont cases previously found Montpelier's Berlin Pond regulations valid.  *See Morse*, 84 Vt. 387; *Quattropani*, 99 Vt. 360.  For that reason, the Sanborns' right to kayak on Berlin

8

Pond was not clearly established until 2012, when the Vermont Supreme Court ruled definitively on the validity of Montpelier's regulation of Berlin Pond.

Even if kayaking on Berlin Pond had been clearly lawful, Jennings is still entitled to qualified immunity from the claims if he held an "objectively reasonable belief that his actions did not violate the plaintiff's rights, based on the information he had at the time." *See Loria v. Gorman*, 306 F.3d 1271, 1282 (2d Cir. 2002). Jennings acted under the good faith belief the Sanborns violated the law by using the pond for recreational purposes. The Court finds that belief to be objectively reasonable based upon the state of the law at that time. Therefore, he is shielded by qualified immunity on the false arrest imprisonment and malicious prosecution claims.

Jennings is also entitled to qualified immunity from the common law negligence claim.[1] Plaintiffs claim Jennings was negligent for failing to further investigate whether they were lawfully present on the Pond before making arrests. However, "the act of investigation is a discretionary one," and Jennings was not required to investigate further. *Amy's Enters v. Sorrell*, 174 Vt. 623, 625 (2002)(finding liquor control inspectors entitled to qualified immunity for acts during

---

[1] Negligence alone cannot sustain a section 1983 claim. *District of Columbia v. Evans*, 644 A.2d 1008, 1019 (D.C. 1994).

investigation).  Nor was his investigation conducted negligently in bad faith because Jennings did not completely evaluate the Plaintiffs' claims of innocence before making the arrests.  *See Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (explaining that officers need not assess credibility of unverified claims of justification before making arrest); *Curley v. Village of Suffern*, 268 F. 3d 65, 70 (2d Cir. 2001) (explaining that officers are not required to "explore and eliminate every theoretical claim of innocence" before making arrest).  Jennings is entitled to qualified immunity from the negligence claim because he was performing, in good faith, a discretionary duty within the scope of his employment.

## CONCLUSION

For the reasons stated above, the Court **grants** Jennings's motions for summary judgment.

Dated at Burlington, in the District of Vermont, this 8th day of August, 2013.

/s/William K. Sessions III\_\_\_
William K. Sessions III
U.S. District Court Judge