```
                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF VERMONT


CEDRIC SANBORN and              :
LESLIE SANBORN,                 :
                                :
            Plaintiffs,         :
                                :
v.                              :     No.  2:12-cv-00228-wks
                                :
WILLIAM JENNINGS and the        :
CITY OF MONTPELIER,             :
                                :
            Defendants.         :
```

**MEMORANDUM OPINION AND ORDER**

This suit arose out of Cedric and Leslie Sanborn's arrests and citations for unlawful trespass by Officer William Jennings of the Montpelier Police Department for kayaking on Berlin Pond in the Town of Berlin. The Sanborns brought claims against the City of Montpelier and Officer Jennings in his individual and official capacities claiming that no legal basis existed for the arrests and citations. On August 8, 2013, the Court granted Defendant Jennings's Motion for Summary Judgment on qualified immunity grounds. The Sanborns filed a Motion to Reconsider and/or Alter Judgment ("Motion to Reconsider") on the basis that the court failed to address their request for further discovery and that disputed facts precluded a finding of summary judgment. For the reasons described below, the Court **denies** the Sanborns' Motion to Reconsider.

**DISCUSSION**

The Court's August 8, 3012 Opinion and Order ("Opinion") set forth a detailed version of the facts of this case, which need not be repeated here. The Court found that Officer Jennings was entitled to summary judgment for all claims based on qualified immunity.

In their Motion to Reconsider, the Sanborns argue that genuine disputed issues of material fact existed that require the Court to reconsider its decision to grant summary judgment. They contend that the Court did not address the disputed facts set forth in their Rule 56(a) Statement. In their Motion to Reconsider, the Sanborns present numerous facts that the Court assumes represent those facts they believe are in dispute and preclude summary judgment.

It is well settled that "[t]he standard for granting a motion to reconsider is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir .1995). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Id.* "[A] party may move for reconsideration and obtain relief only when the defendant

identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 2013 WL 4609100, *8 (2d Cir. 2013) (quoting *Virgin Alt. Airways, Ltd. V. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

The Sanborns present a list of allegedly disputed facts. They assert that Berlin Pond was owned and managed by the State of Vermont at the time of their arrests and citations and that Montpelier failed to investigate or acknowledge that fact. They argue that the Montpelier Police Department could not have relied on the 1926 State Health Order for their authority over the Pond because officers, including Officer Jennings, were unaware of the Order's existence. The Sanborns also claim that the Court wrongly concluded that the record held no evidence suggesting that Officer Jennings was aware of either the Washington County State's Attorney's Office's decision not to prosecute the Barnett case—involving a related trespassing arrest—or the decision's impact on future prosecutions for trespass on Berlin Pond. As evidence of Jennings's knowledge, the Sanborns refer the Court to a communication between Officer Jennings and Chief Facos about their case and the depositions of the officers. The Sanborns also discuss Chief Facos's involvement in the Barnett case and his investigations into the

3

ownership of Berlin Pond.  They allege that "all individuals within the [Montpelier Police] [D]epartment" knew about Chief Facos's discussions with the State's Attorney's Office about the status of Berlin Pond.  Mot. to Reconsider 8, ECF No. 42.  Finally, the Sanborns state that although Jennings believed that Montpelier owned and controlled Berlin Pond, his belief was based on an inexcusable ignorance of the law and a failure to investigate.

The Sanborns also claim that the Court failed to consider their Rule 56(d) request to conduct further discovery.  The request cited unfair restrictions on the discovery process based on Defendants' allegedly inconsistent factual representations, a limit on depositions, and claims of attorney-client privilege.  The Sanborns argue that they should have been able to pursue discovery to clarify Jennings's allegedly inconsistent statements regarding the 1926 Health Order and a rumor that during his time as Police Chief of the Town of Berlin Jennings believed that Montpelier did not have the right to regulate Berlin Pond.  The Sanborns also allege that the Court failed to address their objections to Jennings's attorney's assertions of the attorney-client privilege.  Specifically, they allege that Chief Facos was instructed during his depositions not to answer certain questions due to attorney-client privilege, but later Jennings used that same information to obtain summary judgment.

4

In the Sanborns' Motion to Reconsider, they cite neither controlling decisions nor facts that the Court overlooked that could reasonably be expected to alter the conclusion reached by the Court. Rather, the Sanborns simply reassert their claims of existing disputed facts in an attempt to relitigate the issues that the Court decided in its order granting summary judgment. Because the Sanborns did not meet the standard for reconsideration, the motion is denied.

Assuming the Sanborns had met the standard for a motion to reconsider, the Court would reach the same conclusion. The Court's summary judgment decision rested on the finding that Officer Jennings did not violate a clearly established right held by the Sanborns, and even if he did, that he acted on the objectively reasonable belief that the Sanborns violated the law by kayaking on Berlin Pond. Therefore, Officer Jennings was entitled to qualified immunity. The Court also found that Jennings was immune from the common law negligence claim because he was not required to investigate further the Sanborns' claims that they were lawfully present on the Pond. The alleged factual disputes do not support a contrary conclusion.

The Opinion addressed the allegedly disputed facts. The Court recognized that the City of Montpelier regulated the use of Berlin Pond even though it owned only lands surrounding the Pond and not the Pond itself. Op. 2. The validity of

Montpelier's regulations remained part of an on-going dispute until a 2012 decision by the Vermont Supreme Court. Op. 8-9. Regarding the 1926 Board of Health order which led to the dispute about regulating the Pond, the Court acknowledged the order in its Opinion, but did not indicate that Jennings specifically relied on it. Op. 4, 8-9.

It is undisputed that Officer Jennings acted pursuant to the City of Montpelier's regulations creating a duty to patrol the Pond, and at that time no court had decided that the law did not support that policy. Op. 8-9. Based on the state of the law, Officer Jennings made a reasonable decision to arrest and cite the Sanborns. Op. 9. As a result, any further discovery regarding Jennings's reliance on the 1926 Health Order would not reveal disputed facts material to the summary judgment decision. The Sanborns themselves admit that "[t]he 1926 State Health Order issue is irrelevant to this matter." Mot. to Reconsider 4.

To be regarded as true for a summary judgment consideration, factual disputes must be backed by affidavits or other evidence. *See Cartier v. Lussier*, 955 F.2d 841, 845 (2d Cir. 1992). The Sanborns argue that Officer Jennings was aware of the State's Attorney's decision concerning the Barnett case and its impact on future prosecutions for trespassing on Berlin Pond. They offer no evidence to support their assertion. Both

6

officers stated under oath that they could not remember specifically discussing the State's Attorney's Office's treatment of the Barnett case prior to the Sanborns' arrests and citations. Jennings Dep. 18, 42-43, 67, ECF No. 29-4; Facos Dep. 86-88, 107, ECF No. 29-6.  The Sanborns speculate that Jennings knew about the controversy over Berlin Pond, but Officer Jennings testified that he had "no recollection" of hearing about Chief Facos having problems with the State's Attorney's Office prosecuting the Barnett case.  Jennings Dep. 18, ECF No. 29-4.  Although testimony indicates that officers in the department were aware of the Barnett case, the record held no evidence that Chief Facos discussed the position of the State's Attorney's Office with Jennings.

The Sanborns argue that a fax to Jennings from the State's Attorney's Office is evidence of Officer Jennings's knowledge. *See* ECF No. 36-9.  Although the fax is not dated, the subject line indicates that it relates to Cedric Sanborn and the body of the fax discusses the possible prosecution of the ordinance violation and unlawful trespass charge.  *Id.*  A note affixed to the fax states that the City Attorney agrees and "has a Plan B" and that there would be more to come.  *Id.*  The Sanborns imply that if a "Plan B" was discussed, then a "Plan A" must have been also, and that "more to come" meant that there were other discussions about Berlin Pond.  Mot. to Reconsider 5-6.  They

7

provide no evidence to support the idea that a "Plan A," or any other related matter, had been discussed prior to their arrests and citations. The signature on the note is not clear, though the Sanborns claim that it belongs to Chief Facos. Pl.'s Response to Def.'s Local Rule 56A Statement of Undisputed Material Facts 19. Regardless of who wrote the note, the fax was clearly written after the Sanborns' arrests and citations and included no evidence indicating that Officer Jennings had prior knowledge of the Berlin Pond issue. The Court specifically found that no evidence suggested that Jennings was aware of the State's Attorney's Office's decision regarding the Barnett case. Op. 3. Other allegedly disputed facts regarding Chief Facos's investigation into the status of Berlin Pond are irrelevant because he did not communicate his findings to Officer Jennings. Facos Dep. 107, ECF No. 29-6.

Concerning Officer Jennings's allegedly negligent failure to investigate, the Court found that Jennings had the discretion not to investigate further or to assess the credibility of the Sanborns' unverified claims that they were legally present on Berlin Pond. Op. 9-10. Law enforcement officers are not required to research the legal validity of regulations they are called upon to enforce. Officer Jennings performed a discretionary duty within the scope of his employment and was entitled to qualified immunity from the negligence claims. Op.

8

10. Therefore, the Sanborns' arguments about disputed facts regarding Jennings's lack of investigation are irrelevant.

The Sanborns failed to follow the procedure required by Rule 56(d) of the Federal Rules of Civil Procedure for further discovery. The Rule requires that a litigant submit an affidavit that includes "the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994). The Sanborns provided some of the required information within their Memorandum in Opposition to the summary judgment motion, but failed to submit an affidavit supporting their Rule 56(d) request.

Even if the Sanborns had properly submitted their request, it would still have been denied. As noted above, the Sanborns' request for further discovery about Jennings's reliance on the 1926 Health Order would have no impact on the summary judgment decision. The Sanborns also objected to Defendants claiming attorney-client privilege for communications with the City Attorney's office and refusing to allow deposition of certain individuals. The Sanborns, however, failed to follow the appropriate procedure for discovery disputes and did not move to compel the requested information. The communications between

opposing counsel provided by the Sanborns show that the attorney-client privilege issue has been disputed since mid-March 2013, giving the Sanborns plenty of time to file such a motion.  Mem. in Opp'n to Def. Jennings' Mot. for Summ. J., Ex. 18, ECF. No. 37-2.  The Sanborns provided the Court with no basis for granting relief, so their request for further discovery was properly denied.

## CONCLUSION

For the aforementioned reasons, the Court **denies** Cedric and Leslie Sanborn's Motion to Reconsider and/or Alter Judgment.

Dated at Burlington, in the District of Vermont, this 22nd day of October, 2013.

/s/William K. Sessions III
William K.  Sessions III
U.S.  District Court Judge
